UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL WALTER PAYETTE,

        Plaintiff,                               Case No. 2:08-cv-217

v.                                                 Honorable Robert Holmes Bell

D. GERTH, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Currently before the court is Defendants' motion for summary judgment (docket #52), which asserts that Plaintiff failed to exhaust his available administrative remedies. Plaintiff was twice granted extensions of time to file a response (docket #60 and #65), and the deadline for filing a response has passed. Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

2

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, he sues Assistant Resident Unit Supervisor D. Gerth, Resident Unit Manager Unknown McBurney, Assistant Deputy Warden Unknown Rutter, Deputy Warden D. Lesatz, Inspector Unknown Contreras, Warden David Bergh, and MDOC Director Patricia Caruso. Plaintiff asserts that while he was confined at the Alger Maximum Correctional Facility (LMF), Defendant Gerth refused to process 22 pieces of expedited legal mail on August 18, 2008, and read four of the letters, one to an attorney and three to the ACLU. Plaintiff claims that the letters contained a complaint that he had been sexually touched by another Alger officer during a pat down search. Plaintiff states that Defendant Gerth kicked him out of her office without giving him any expedited mail forms, and only five envelopes of the 20 that he needed. Plaintiff states that he managed to grab three forms for expedited mail as he left Defendant Gerth's office, and that he was able to obtain another 17 from a corrections officer. Plaintiff alleges that he sent a letter of complaint regarding Defendant Gerth to Defendants Caruso, Bergh, Lesatz, Rutter, Contreras, and McBurney, but that he never received a response.

Plaintiff alleges that he put a request for expedited legal mail in the Resident Unit Manager's mailbox for processing the next day. On August 19, 2008, Defendant Gerth gave him approved forms for two of the expedited legal mail requests, but when Plaintiff attempted to give her the remaining 18 completed forms, she refused to take them. Plaintiff subsequently sent five or six letters of complaint to Defendants Caruso, Bergh, Lesatz, Rutter, Contreras, and McBurney, to no avail.

3

Plaintiff asserts that he placed additional expedited legal mail requests in the Resident Unit Manager's mailbox on August 20, 21, 22, 25, 26, 27, 28 and 29, 2008, but that none of the requests were processed by Defendants McBurney or Gerth. On August 21, 2008, Plaintiff told Defendant McBurney that he was afraid that Defendant Gerth was destroying his legal mail requests because he filed so many grievances and was complaining about being sexually assaulted by an officer at LMF. However, Defendant McBurney did not assist Plaintiff with his concerns.

Plaintiff claims that on August 28, 2008, he sent all of this information to the Grievance Coordinator, Wayne Trierweiler, asking for grievance forms so that he could exhaust administrative remedies. Plaintiff was on modified access to the grievance procedure from August 12, 2008, through November 11, 2008. Mr. Trierweiler attests that he immediately responded and informed Plaintiff that he would have to rewrite his complaint on a grievance form, and attach four copies of any additional pages. Instead Plaintiff simply complained about the process and attached a copy of his earlier complaint letter. (Defendants' Exhibit 1.) Plaintiff alleges that he did not provide any copies because he was unable to obtain them from the library and would have had to hand write copies with carbon paper. Plaintiff asserts that he did not have time to do that and believes that requiring him to do so would thwart the grievance process. Plaintiff claims that Defendants violated his First and Fourteenth Amendment rights. Plaintiff seeks equitable relief.

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available

4

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD.

5

The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ II. (effective April 28, 2003). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ LL.

As noted above, Plaintiff was placed on modified access to the grievance procedure on August 13, 2008, or August 14, 2008. (Defendants' Exhibits 1-A and 1-B.) On August 28, 2008, Plaintiff requested 15 grievance forms from Mr. Trierweiler. Mr. Trierweiler approved two of the grievance requests, one complaining of Defendant Gerth's refusal to process 22 pieces of legal mail on August 18, 2008, and of supervisory staff's failure to take corrective action, and another

6

complaining that his property had either been stolen or thrown away. (Defendants' Exhibit 1, ¶¶ 4-5.) Plaintiff subsequently submitted two completed grievance forms, one concerning Defendant Gerth and the legal mail, and another that said he was refusing to rewrite his grievance regarding the loss of his property. (Defendants' Exhibit 1, ¶ 6.) Neither of the proposed grievances was proper, so Mr. Trierweiler returned the forms to Plaintiff on September 2, 2008, pointed out the policy violations in Plaintiff's grievance forms, and advised Plaintiff to resubmit corrected copies. Mr. Trierweiler attests that once corrected copies were submitted, he would have logged them into the grievance tracking system. (Defendants' Exhibit 1, ¶¶ 7-8.) Plaintiff failed to return a corrected grievance regarding either issue as required by MDOC policy, so no grievances were logged into the system. (Defendants' Exhibit 1, ¶ 9.)

Richard B. Stapleton, MDOC Administrator in the Office of Legal Affairs, attests that Plaintiff filed 12 step III grievances while housed at LMF in August of 2008, and that a review of those grievances shows that Plaintiff did not complain about Defendant Gerth refusing to process 22 pieces of legal mail in any of those grievances. (Defendants' Exhibit 2, ¶¶ 15-16.) Defendants also offer copies of Plaintiff's grievances filed during the pertinent time period, which support the assertions made in Richard Stapleton's affidavit. (Defendants' Exhibit 2-A - 2-M.)

A review of the record in this case reveals that Plaintiff was given an opportunity to file a grievance exhausting the claims he is asserting in this case, but that Plaintiff refused to comply with grievance policy. Plaintiff never submitted a step I grievance against any of the Defendants, nor did he pursue any such grievance to step III. Therefore, the undersigned concludes that Plaintiff failed to exhaust his administrative remedies.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #52) be granted. In addition, should the court adopt the report and recommendation in this case, Plaintiff's pending motion (docket #50) is properly denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: August 25, 2010